# DEPARTMENT OF PROFESSIONAL REGULATION, etc. v CLUETT

## Case No. 84-3586

State of Florida, Division of Administrative Hearings

August 14, 1985

### APPEARANCES OF COUNSEL

**Susan Hartman,** Department of Professional Regulation, Division of Real Estate, for petitioner.

**John J. Schiller** for respondent.

### OPINION

ELLA JANE P. DAVIS, Hearing Officer.

### *RECOMMENDED ORDER*

A formal hearing was held in this matter before Ella Jane P. Davis,

duly designated Hearing Officer of the Division of Administrative Hearings on May 13, 1985 in Fort Myers, Florida.

At the formal hearing, Petitioner called as witnesses, Mary Snodgrass, Robert James and James Potter. Petitioner's Exhibits 1-5A and 5B and 7 were admitted into evidence. Petitioner's Exhibit 6 was admitted for purposes of mitigation or aggravation only pursuant to a post-trial evidentiary order entered June 18, 1985. Respondent Ernest Cluett called as witnesses himself, Helen Weise, and Mary Cluett, his wife. A transcript was provided by the Petitioner. Only Respondent filed proposed findings of fact and conclusions of law, which have been considered. To the extent that his proposed findings of facts and conclusions of law are inconsistent with those contained in the instant Recommended Order, they are rejected as not supported by the direct, credible evidence or as unnecessary to the resolution of this case. However, either directly or indirectly each proposal has thereby been considered.

## FINDINGS OF FACT

1. Petitioner and Respondent stipulated at formal hearing to Paragraphs 1-6 of the Administrative Complaint, (TR-5-6) and it is accordingly found that:

a. Petitioner seeks to suspend, revoke or take other disciplinary action against Respondent as licensee and against his license to practice the real estate brokerage business under the laws of the State of Florida.

b. Respondent is now and was at all times alleged in the administrative complaint a licensed real estate broker having been issued license number 0191613.

c. The last license issued was as a broker c/o Cluett Realty, Inc., 4720 Palm Beach Boulevard, Fort Myers, Florida 33905.

d. On about July 14, 1983, Respondent received a check in the amount of $400.00 from Mary Snodgrass, a salesman, who at the time was associated with Respondent. Snodgrass had received the money from Robert James. James had submitted four contracts which were accepted for purchase of four duplexes listed with Respondent. The $400.00 represented a deposit of $100.00 on each of the four contracts.

e. When the check was entrusted to Respondent, Snodgrass stated that the buyer had requested the check be held a couple of days before

depositing into escrow to insure it would clear. Respondent indicated this was wrong and the check should be deposited immediately.[1]

f. The check was not deposited into Respondent's escrow account, but, was held by Respondent until September 15, 1983, two months after initial receipt of the check.

2. The check presented by Mr. James (buyer) to Mrs. Snodgrass (saleswoman) was drawn on the Fort Myers Barnett Bank and on its face represents it is drawn on an account in the name "Clara A. James For: Caj-Raj-Casa De Chihuahua's." There is no indicator on the check itself that Robert A. James is an appropriate signator on this account. At hearing, Mr. James represented that he was a proper signator on the account because Clara A. James is his wife. Mrs. Snodgrass represented that she knew Mr. James had this authority but there was no predicate laid for this knowledge on her part and there is nothing about the check itself which would convey such knowledge to someone not intimate with the James household, nor does the check itself reveal any relationship between Mr. James and "Caj-Raj-Casa De Chihuahua's."

At the time Snodgrass submitted the check to Respondent, she informed Respondent that it was possible that the check would not clear the bank due to insufficient funds.

3. At the time of his conversation with Mrs. Snodgrass on July 14, Respondent was aware of previous problems arising from failure of an

---

[1] The bulk of Mrs. Snodgrass' testimony goes to three interchanges between herself and Respondent: (1) That apparently she believes she asked the Respondent to hold the check only for *several hours* or until the end of the *day* to allow Mr. James to transfer funds *if needed*; (2) Whether Respondent immediately returned the check to her on July 14 and *simultaneously* told her to either return it or deposit it immediately, and (3) Whether or not Respondent mentioned the check in a pre-September 15 telephone conversation with her. Most of Mrs. Snodgrass' testimony concerning interchanges (1) and (2) was vague and confused. For reasons stated hereafter, the accuracy of her memory is questionable, if not her credibility. Mr. James' testimony with regard to interchanges (1) and (2) is vague and confused but moreover is internally contradictory in several respects and in the supportive detail of location of people, offices, and chronology of events. Respondent testified that Mrs. Snodgrass requested he hold the check for a couple of days and Petitioner's investigator, James Potter, testified that both Mr. James and Mrs. Snodgrass admitted to him months prior to formal hearing that the request was to hold the check a couple of days. These matters have bearing on the credibility of Mrs. Snodgrass and the credibility of Mr. James and peripherally relate to findings of fact on interchanges (2) and (3) but any issue of fact concerning what transpired in regard to interchange (1) has been resolved by *stipulation of the parties* that Mrs. Snodgrass requested the check be held a couple of days. Consequently, much of Mrs. Snodgrass' and Mr. James' testimony need not be discussed hereafter in detail.

earlier check written by Mr. James for rent to one of Respondent's other clients to clear the bank. Respondent was also aware that Mr. James had refused to vacate the premises which James, James' wife, and approximately 80 Chihuahuas occupied by rental from this other client. Respondent perceived Mr. James represented Respondent due to Respondent's involvement in getting the James entourage out of the rental properties so that Respondent's other client as sell could close sale of that property to a third party buyer.

Accordingly, Respondent retained the check when it was given him by Mrs. Snodgrass for a few minutes to think about the situation. He then returned it to her and explained it was an inappropriate deposit because it did not represent cash if they knew at the time it was tendered that it might be returned for insufficient funds. He told Mrs. Snodgrass to either secure a check which would clear or to inform both potential buyer and sellers that there was no deposit placed in escrow on the four contracts.

Mrs. Snodgrass denied that the check was returned to her by Respondent or that this conversation ever took place; she assumed the check would be held by Respondent until evening and in the evening she went out and got the sellers to sign the 4 contracts previously signed by James. Mrs. Snodgrass placed the signed contracts in a file drawer in Respondent's office and never again initiated any title work or any conversation with Respondent about the transaction.

The testimony of Mrs. Weise and Mrs. Cluett support the material particulars of Respondent's version of this second interchange between Mrs. Snodgrass and Respondent. Mr. James testified that he did, indeed, go to the following day (July 15) to the bank to transfer funds if needed, but did not then notify Mrs. Snodgrass or Respondent because the money transfer was not necessary. Upon this evidence and due to the credibility problems recited in footnote 1, *supra* and in the Findings of Fact Paragraph 8 *infra*; the Respondent's version of this interchange is accepted over that of Mrs. Snodgrass and provides additional, but not contradictory, information to Finding of Fact Paragraph 1-e as stipulated by the parties.

4. In early September, Mrs. Snodgrass secured employment with Barbara Ware Realty, a competitor of Respondent. She then turned in all of her keys, gear, and papers to Cluett Realty. Shortly thereafter, Helen Weise, secretary to Respondent, discovered the July 14, 1983 check on what had been Mrs. Snodgrass's desk.

5. This discovery is confirmed by both Respondent and Mrs. Weise. Respondent knew Mrs. Snodgrass and Mr. James were personal

**207**

friends. He telephoned Mrs. Snodgrass about the status of the James' transaction when the check was discovered. Mrs. Snodgrass admitted she thereafter called Mr. James to verify the status of the transaction and then called Respondent to tell him she thought the sale would go through, but she now denies telling Respondent that the July 14, 1983 was good or even that Respondent mentioned the check when he called her the first time. Respondent then deposited the check into his escrow account the next day, September 15, 1983. He immediately placed the request for title search and insurance.

6. Thereafter, two duplexes out of the four involved in the four James contracts with Cluett Realty were sold by Mrs. Snodgrass through her new employer, Barbara Ware Realty, and two were sold by Mary Cluett, Respondent's wife, through Cluett Realty.

7. During the period from July 14, 1983 until September 15, 1983 Mr. James was apparently aware that the check submitted to Cluett Realty had never been deposited by Cluett Realty because it did not show up in monthly bank statements. After September, Mr. James clearly was fully aware of what was going on because he admits to trying to get Mary Snodgrass to pursue the transaction under her new employer's auspices, despite Cluett's retaining the exclusive listing for the sellers of the properties. It was not established whether or not the sellers were misled by Respondent's failure to immediately deposit the July 14, 1983 check, but Mr. James testified that when Respondent approached him about refunding his deposit or at least a portion thereof, he (Mr. James), told the Respondent to keep it or give it to the sellers or at least not to give it back to him due to all the inconvenience.

8. Mr. James and Mrs. Snodgrass were friends on July 14, 1983. They became friendlier thereafter. Apparently, in early September, Mrs. Snodgrass left Respondent's employ upon very unfriendly terms. The terms may be characterized as "unfriendly" even if one accepts Mrs. Snodgrass' version that her job hunt was successful before she was fired by Respondent and therefore she should be viewed as quitting upon being asked by Respondent to resign. Respondent has previously filed an unsuccessful complaint with the Department of Professional Regulation against Mrs. Snodgrass. It was she who initiated the complaint giving rise to these instant proceedings against Respondent. Mrs. Snodgrass' resentment of Respondent's filing a complaint against her was evident in her demeanor on the stand.

An attempt at formal hearing to impeach Respondent's credibility upon the basis of a supposed prior admission to Petitioner's investiga-

208

tion that Respondent "forgot" to deposit the crucial check and upon the basis of Respondent's July 13, 1984 letter to the Department of Professional Regulation (P-7) left Respondent's credibility intact. When Investigator Potter's testimony as a whole is compared with Respondent's letter as a whole in light of Potter's investigation of three separate complaint over a period of many months[2] there is no material variation of Respondent's representations. Also, what was "forgotten" and *when* it was forgotten is vague and immaterial in light of consistent information supplied to the investigator by Respondent that there was a request to hold the July 14, 1983 check for a couple of days due to insufficient funds.

## CONCLUSIONS OF LAW

Respondent is charged with a violation of Sections 465.25(1)(b) and (k) Florida Statutes which provide as follows:

(1) The commission may deny an application for licensure, registration, or permit, or renewal thereof; may suspend a license or permit for a period not exceeding 10 years, may revoke a license or permit; may impose an administrative fine not to exceed $1,000 for each count or separate offense; and may issue a reprimand, or any or all of the foregoing, if it finds that the licensee permittee, or applicant:

(b) Has been guilty of fraud, misrepresentation, concealment, false promises, false pretenses, dishonest dealing by trick, scheme, or device, culpable negligence, or breach of trust in any business transaction in state or any other state, nation, or territory; has violated a duty imposed upon him by law or by the terms of a listing contract, written, oral, express, or implied, in a real estate transaction; has aided, assisted, or conspired with any other person engaged in any such misconduct and committed an overt act in furtherance of such intent, design, or scheme. It is immaterial to the guilt of the licensee that the victim or intended victim of the misconduct has sustained no damage or loss; that the damage or loss has been settled and paid after discovery of the misconduct; or that such victim or intended victim was a customer or a person in confidential relation with the licensee, or was in identified member of the general public.

$\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$

(k) Has failed, if a broker, to immediately place, upon receipt, any money, fund, deposit, check, or draft entrusted to him by any person

---

[2] These were Respondent's unsuccessful complaint against Mrs. Snodgrass, Mrs. Snodgrass' complaint against Respondent, and a third unrelated complaint somehow involving Respondent.

dealing with him as a broker in escrow with a title company, banking institution, or savings and loan association located and doing business in this state, or to deposit such funds in trust or escrow account maintained by him with some bank or savings and loan association located and doing business in this state, wherein the funds shall be kept until disbursement thereof is properly authorized; or has failed, if a salesman, to immediately place with his registered employer any money, fund, deposit, check, or draft entrusted to him by any person dealing with him as agent of his registered employer. The commission shall establish rules to provide for records to be maintained by the broker and the manner in which such deposits shall be made.

Respondent, who was technically in a fiduciary relationship with the sellers, could not reasonably be expected to process a check he was advised might not be covered by sufficient funds, written by a potential buyer who had a past history of a bad check in a real estate transaction with another one of Respondent's clients. This is particularly so where the check was written by one who did not appear on the check face as a valid signator.

When Respondent subsequently discovered the check had not been returned to Mr. James, it would have been more prudent to have returned it and requested a new one, however in light of all the circumstances Respondent's choice of trying to salvage the transaction, if possible, was not unreasonable in light of Mrs. Snodgrass' representation to him that the transaction would probably go through.

There is no evidence in the record of any *meretricious intent* on Respondent's part. Such *intent* is a crucial element of proving-up fraud. Even if the worst scenario painted by Mrs. Snodgrass and the DPR investigator were accepted—that Respondent "forgot" to deposit the check for two months, there is not even circumstantial evidence of *intent* to defraud. On the contrary, closing the sale would have been to Respondent's monetary benefit, and clearly, Mr. James' telling Respondent to keep the money due to the mixup is tantamount to an admission that no fraud was perceived by him until prompted to think otherwise by the "bad blood" between Mrs. Snodgrass and Cluett.

The Petitioner has failed to bear its burden of proof to establish by clear and convincing evidence that Respondent has violated the foregoing statutory sections. There is confusing dicta in the decision in *Bowling v. Department of Insurance*, 394 So.2d 165 (Fla. 1st DCA 1981), suggesting that the "clear and convincing" standard of proof is replaced under the new APA by a "competent substantial evidence"

210

standard of proof. Cf. also *Harvey v. Department of Business Regulation*, 451 So. 2d 1065 (Fla. 5th DCA 1984), but the latter standard always has been, and only can be, a standard for use in appellate review. Accordingly, the standard of proof in license revocation proceedings remains that of "clear and convincing" evidence.

Upon the foregoing findings of fact and conclusions of law it is,

## *RECOMMENDATION*

It is Recommended that the Florida Real Estate Commission enter a Final Order dismissing all charges against Respondent.

DONE and ORDERED this 14th day of August, 1985, in Tallahassee, Florida.